GALLAMORE v. GLAZIER et al.   (No. 7862.)

(Court of Civil Appeals of Texas.   Dallas. Jan. 26, 1918.)

INTOXICATING LIQUORS ⬤⟿181—SALE TO MINORS—RECOVERY OF PENALTY—PARTIES.

Where there had been no legal proceeding awarding custody and control of a minor and the real father was still living, the stepfather, who had married minor's mother after divorce, could not, the mother being dead, maintain an action for the penalties prescribed by Vernon's Sayles' Ann. Civ. St. 1914, art. 7452, for selling or giving intoxicants to a minor, although the minor had lived with and been supported and controlled by the stepfather, and his father had neither supported nor asserted any interest in his welfare, in view of article 4070, providing that where one of the parents is dead the survivor is the natural guardian of the person of the minor children and entitled to appoint a guardian of their estates.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by W. H. Gallamore against L. Glazier and another. Demurrer to complaint sustained, and plaintiff appeals. Affirmed.

Albert Walker and O. F. Wencker, both of Dallas, for appellant. Felix D. Robertson and T. L. Camp, both of Dallas, for appellees.

RASBURY, J. This suit was brought by appellant against appellee Glazier, as a principal, and appellee Fidelity & Deposit Company, as surety, upon a retail liquor dealer's bond to recover $5,000 for ten separate violations of the statute in the sale of liquor to appellant's stepson, C. F. Day, a minor. The suit was grounded on that portion of article 7452, Vernon's Sayles' Civil Statutes, which makes the liquor dealer and the sureties upon his bond liable to defined persons for prescribed penalties in case of selling or giving or permitting to be sold or given in his premises intoxicating liquors to any person under the age of 21 years. The pleading, consisting of an amended and supplemental petition, omitting formalities, alleged in substance that the minor was the son of Buck Day and his former wife, who divorced him and to whom in said proceed-

ing was awarded the exclusive control, care, and custody of said minor. After said Buck Day's wife had so divorced him, and in March, 1903, she married appellant and remained his wife until her death in 1912. When appellant married his said wife, her minor son, who was 5½ years of age, lived with appellant and his wife until her death and with appellant thereafter up to the filing of this suit, a period of nearly 14 years. From the time of appellant's marriage with the minor's mother until her death, and since, said minor, whom appellant regards with affection, has made his home with the appellant, during which time appellant has exercised over him entire control, custody, and care, performing in behalf of said minor the things a father would do under similar circumstances, by training and looking after said minor as his own child, providing him with needed clothing, educational advantages within appellant's means, advising and counseling him concerning his conduct, securing him employment, and in that connection controlling his earnings, and in the exercise of such advice, restraint, and control said minor has recognized appellant's authority both before and since the death of his mother. The father of said minor, Buck Day, has at no time since said divorce or since the death of his former wife asserted any interest in the welfare of said minor or contributed anything to his support and maintenance. Further, the mother of said minor upon her deathbed placed said minor in appellant's control, custody, and care and requested appellant to continue to care for, rear, and educate said minor and continue with said minor the parental relations of the past. The trial judge sustained the general demurrer and three special exceptions directed against said petition. From such action this appeal was taken.

The rights conferred by the provision of the statute cited and those entitled to assert them have been considered from nearly every angle of offense and defense, and for that reason we shall not engage in any general discussion of the construction placed thereon by the many decisions, but confine ourselves to the precise question involved in the several propositions challenging the action of the court in the respect stated. The real issue, gathered from an analysis of the propositions, is whether one standing in loco parentis to a minor while the real parent is in esse may, as an aggrieved person, maintain a suit to recover the penalty prescribed by the statute in the case stated. In Peavy v. Goss, 90 Tex. 89, 37 S. W. 317, it was held that the only person aggrieved in case of a sale, etc., to a minor, and hence the only person entitled to sue, was the parent or some one standing in loco parentis. While the petition in the instant case does disclose that appellant was in fact standing in loco

parentis to the minor, and that his real father while living had neither contributed to the support of the minor nor asserted any interest in his welfare, but by inference had abandoned his rights in that respect to appellant, yet that fact did not affect the right of the real father to maintain a suit for penalties. Cox v. Thompson, 96 Tex. 468, 73 S. W. 950; Price v. Wakeham, 48 Tex. Civ. App. 339, 107 S. W. 132. It is also true that appellant's wife, under the holding in Price v. Wakeham, supra, had the right in her lifetime to maintain such a suit in virtue of the right of custody and control conferred by the district court, but that fact is also without force in view of her death before suit, and in view of the fact that the father became the natural guardian of the person of the minor upon her death, and entitled to the guardianship of his estate. Article 4070, Vernon's Sayles' Tex. Civ. Stats.

We thus recur to the original question, as stated. And while it seems consistent with reason for another, by his voluntary acts, to stand in loco parentis in fact to a minor, it does seem inconsistent with reason that such other by reason of that relation may succeed to the legal rights of the real parent. Parentage and the legal consequences and rights arising from that relation may not be changed by the voluntary acts, however commendable and philanthropic, of another. Courts may only change the legal rights arising from the relation in a limited respect when it is made to appear to be for the best interests of the minor. Further, the recovery authorized by the article cited does not accrue to, nor is it for the benefit of, the minor. On the contrary, it accrues to and is for the benefit of those aggrieved; that is to say, adopting the precise language in Peavy v. Goss, supra, "any person having an interest recognized by law in the subject-matter of the judgment," who, in suits of this character, were held to be only the parents or those standing in loco parentis. The most that can be deduced from the case cited, in our opinion, is that one standing in the place of the parent during the life of the latter may become an aggrieved person only when that right has been conferred in some legal manner, as by decree appointing such person guardian or awarding to him the control and custody of such minor. Even in such case it is doubtful whether the real parent would lose his right to sue. Neither the relation of stepfather nor the dying request of the minor's mother that appellant assume the responsibility, even if it be conceded, as it may, that it was for the best interest of the minor, created any legal status between the parties nor conferred any parental rights upon appellant. As we have shown, the natural guardian of a minor is declared by statute to be its parent, and while the custody and control of the minor may be awarded to one of the two parents or for that matter to another, until that change has been accomplished, one standing in loco parentis does not, in our opinion, become an aggrieved person within the contemplation of the act.

We also hold there is a marked distinction to be made between one who is an aggrieved person under the special provisions of the statute cited, and the rights and liabilities generally of a minor and one who voluntarily stands in loco parentis to him. The rights of aggrieved persons as defined in the statute arise by virtue thereof, while the rights under the other relation arise upon different grounds. Cases of the latter character, of which Schrimpf v. Settegast, 36 Tex. 296, is typical, place their holding upon moral and equitable grounds and deal with rights accruing to the minor, the one assuming the relation of parent in fact and third persons, and have to do with the right of the minor to recover for his services, the right of the one assuming the relation to receive the services without compensation, and the rights of third persons to hold the latter bound for the maintenance and support of such minor. In the case cited it is said that a person "who had, through motives of kindness or charity, received an orphan child into his family, whether it be a stepchild or an entire stranger, and treated it as a member of his family," would, "so long as such child should see fit to remain in such family," be bound for its support and maintenance and entitled to its reasonable services. It is apparent that the rule in such cases is without application or controlling force in the instant case.

From what has been said, we conclude the petition was subject to the general demurrer, in that the facts related failed to show any legal right in appellant susceptible of an enforcement in the courts. Accordingly the judgment of the trial court is affirmed.

Affirmed.